and we'll move to the third appeal of the day. Third appeal today is McDaniel against Syed and others. Appeal number 20-2946 and we'll be hearing from Mr. Kilberg and from Mr. Hector. Mr. Hector are you with us yet? Ah there we are. Okay Mr. Hector can you hear us? I can thank you your honor. All right and Mr. Kilberg then go ahead. Good morning and may it please the court. My name is Andrew Kilberg and I represent Plaintiff Appellant Carl J. McDaniel. This court should reverse the District Court's grant of summary judgment on McDaniel's Americans with Disabilities Act and Rehabilitation Act claims against the Wisconsin Department of Corrections and its eighth amendment claim against Dr. Salam Syed under 42 USC section 1983. In granting summary judgment to defendants the District Court viewed the facts in the light most favorable to the defendants not McDaniel. The record as submitted by the defendants is more than sufficient to support a fact finder's conclusion that the Department of Corrections failed to provide McDaniel reasonable accommodations and that Dr. Syed was deliberately indifferent to McDaniel's serious medical needs in violation of the eighth amendment. The court can reverse the District Court without reaching McDaniel's argument that his submissions in opposition to the motion should have been fully considered. However McDaniel's submissions do confirm the summary judgment wasn't proper. On the failure to accommodate claim it is undisputed that McDaniel is disabled and that he was otherwise eligible for the same programs and services as other inmates. The Department of Corrections also on appeal has not argued at least for purposes of summary judgment that the accommodations McDaniel seeks do not present present security concerns safety concerns or administrative exigencies. That is this court's quote from Love 103 F3 at 561 which defines what it means for an accommodation in the prison context to be unreasonable. Rather this appeal concerns a narrow issue. Is there a genuine dispute that the lack of accommodations McDaniel requested denied him meaningful access to prison programs or services? In other words as this court explained on Bonk and Wisconsin Community Services is a modification necessary to allow the disabled to obtain benefits they ordinarily could not have by reason of their disabilities. And as the Supreme Court has made clear access must be meaningful. Mr. Kilberg do you make the same arguments regardless of the scope of the record? Yes your honor I don't think it's in part three of our briefs. I don't think you need to reach part three our view is that the defendants the grant of summary judgment on these two to these two defendants should be reversed even if we're just taking the state's record as it was presented to the court. With respect to the failure to accommodate we've raised three separate types of accommodations. The first is the no stair unit. I think there is a clear and genuine dispute of material fact preventing summary judgment on this. The Department of Corrections simply says that McDaniel doesn't need a no stair unit but there's evidence that he could regularly climb this cannot regularly climb the stairs on his own even with his walker. I would urge the court to look at the video evidence that the state submitted to the district court and that is with a DVD with the briefs in front of you today that shows that Mr. McDaniel needed the help of another inmate to carry his walker up the stairs and down the stairs. As the Second Circuit explained in the Wright case it is not sufficient if you need to rely on other individuals to help you. That is not an effective accommodation to use a word from this court and EEOC versus Sears Roebuck from 2005. There's also other evidence. So on that issue Mr. Kilburg I think we've said before that the ADA and the Rehab Act are not medical malpractice statutes. And I wonder if you could address where Dr. Syed's testimony that he thought plaintiff in essence ought to go up and down stairs for to prevent atrophy etc. Where does that fit into the ADA and Rehab Act claims here? Yes your honor. If Dr. Syed's declaration cites the two documents in the record that one I believe is a nurse's note and one is a note from from Dr. Syed himself and in the medical the medical file for McDaniel. I don't believe that I believe that neither of those documents need to be read to suggest that McDaniel needed to go up and down stairs to maintain his muscle definition. The nurse's notes I'm mistaking which one's which but one of them doesn't even mention stairs and the other one says he needs to move but then doesn't say that he has to go up and down stairs to maintain his muscle definition. It says he can use his cane. Yes judge. Is there any evidence in the record about the weight of the walker one and about his ability to go up and down stairs with the cane as opposed to the walker two? Your honor the only evidence that I'm aware of in the record relating to the weight of the walker is McDaniel himself saying that it's too heavy for him to carry and that it was it was a heavy walker. As respect to his ability to go up and down the stairs he simultaneously had a cane restriction and a walker restriction and the there is medical there is evidence that the health services unit advised him to try to use the cane to go up and down the stairs but I think it is a reasonable inference that the district court should have drawn from McDaniel that particularly light of the video evidence showing a prisoner another prisoner helping him with the walker to go up and down. He can't go up and down with the cane and then also have the walker once he's on a level surface. And we do have plaintiff's testimony to the effect that he missed something like 600 meals and repeatedly missed pain medications because of the stairs being an obstacle correct? That's correct your honor. He has testified in his deposition and he complained repeatedly to the health services unit staff and to other prison officials that he could not regularly go up and down the stairs and he would visit the canteen on an irregular basis to try to get his own order his own meals and effectively snacks in order to you know have some calories to get through. So Mr. Kilberg if plaintiff were able to go forward on a rehab act claim let's say based on the no stairs unit branch of your theory there what relief would be available to him at this point if we were to send it back for trial? Well first there is the contempt that he does see compensatory damages but we are also seeking we're still keeping our claim for injunctive relief. He's no longer at that same facility is he? He is not at either the two facilities that are in an issue in the summary judgment record he is he's not at either of them but I but the department of corrections is a defendant and I believe that it is would be appropriate for the district court to issue injunctive relief if it were not you know this would be the type of case that is certainly capable of repetition univading review he has been transferred several times within the last several years and you know the prison system could simply avoid you know having to litigate these claims to trial by transferring prisoners. As I noted I think that there is sufficient evidence to to support the no stairs unit claim we also believe that there is there is sufficient evidence to support a single occupancy wet cell for him. This court in Banks versus Patton which is a decision from 2018 has said that it is a dubious proposition that placing an inmate in a cell with that with a toilet and bed is enough even if the inmate cannot use either easily. There is evidence in the record in the state's record from Dr. Marsetter a nephrologist if I pronounced that correctly who had clearly recommended a single cell for him due to his incontinence issues that is supplemented by his deposition testimony is also supplemented by a nurse's note that they were going to try to look at his bathroom configuration in order to try to alleviate the issues he was describing and I think that a analogous case to this as closely analogous as we can get on the different facts that always arise would be the Norfleet case from 2018 in the southern district of Illinois in which the court in which an inmate excuse me was unable to access the toilet because his cell was too crowded. Here there's substantial evidence that McDaniel who was incontinent was unable to access the toilet and to the extent that he needed to and certainly not not to the extent that he had meaningful access the same as he would have had otherwise if he was not disabled. So on those issues Mr. Kilberg at least as best I can tell a single cell in essence of a toilet that only he could use looks unprecedented to me as a in terms of awarding that kind of relief to prisoners and I and if I just by way of background let me just raise a broader issue of concern here particularly with the aging prison population that we deal with in so many facilities around the country these days. We've got lots and lots of chronic medical care chronic conditions requiring a lot of medical care and a lot of times pain and other conditions just cannot be managed to the satisfaction of the patient. How do we go about drawing lines in whether we're talking about the Rehab Act or the or the Eighth Amendment with respect to getting with respect to the Rehab Act your honor I think that the concern you're describing to me goes to whether or not there are administrative exigencies that would prevent the provision of that accommodation and I just don't think that is an issue on appeal. I do think that is a defense that the state could and certainly probably would raise at trial. With respect to the Eighth Amendment of course there is always going to be a risk of something like malingering you know the defendant excuse me plaintiff is simply making it up or wants to get access to drugs but I think this court's case law shows that when you have evidence that pain is not abated that it is consistent and insistent that the medical professionals have not deviated and in fact here continued to tell the plaintiff that he just needs to live with it. I think that's sufficient to get to trial particularly in light of corroborating evidence such as Dr. Choi clearly recommending no top bunk yet Dr. Saeed not signing off on that on that accommodation. Okay while we're on that can I ask you I have trouble understanding how the mere presence of a top bunk poses a threat of harm to Mr. McDaniel. Yes your honor it's that as he explained in his deposition testimony he has many physical issues one of which is that he cannot move very quickly including his neck and his head and it's trying to get in and out of the bed he hits his head repeatedly. It also means that when a cellmate is attempting to climb up to the top bunk because throughout I believe the period of the summary judgment record he was always had a low bump restriction so he would get the bottom bunk he can't get out of the way as they are trying to get into the top bunk so he gets kicked or hit repeatedly and that impedes his safe access to a bed which again I think the court in banks recognized is a prison service that he was entitled to safe access to. Can I ask you about the toilet return to the toilet? If one of the accommodations he was seeking or would have been helpful was a reconfiguration of a toilet why would having a single cell be necessary there if the fix was a reconfiguration? Yes your honor I think the piece of evidence I cited was a demonstration that the he was not able to access this toilet safely. My client is consistently I think requested to have a single cell. One thing that he described in his in his deposition testimony was with a cellmate his inability to have something to hold on to such as his walker that would prevent him from falling off the toilet because of the need to put up a courtesy screen which is a common thing my understanding to allow prisoners to not have to view the other person going to the bathroom. So I don't think the reconfiguration was just like moving the toilet but there is sufficient evidence to show that a single cell would be needed to allow him to truly meaningfully access that the toilet because otherwise he he's he was falling off he was creating issues with his cellmates because of his incontinence and even you know the state had offered him diapers but those don't aren't sufficient because he also testified that it still leaks out. And what was Mr. McDaniel's position on timed voiding which was recommended to him by a doctor as a way to address the incontinence issues? Is this something he tried? Did he feel it was inadequate and if so why? Your honor the the most that I can say about that from my recollection is that while he was at the New Lisbon prison for a period of time during the pendency of this litigation they did put him in a single cell that they modified including by modifying the bunk so that he wouldn't hit his head and I believe he said things were better but his incontinence issues are the type that they cannot always be entirely resolved. I see I've blown through all of my time. Well we've had we've asked you a lot of questions we'll give you an opportunity for rebuttal but thank you very much for those arguments Mr. Kilberg. For the defense Mr. Hector. Good morning your honor and may it please the court. I'm assistant attorney general Colin Hector and I represent the Wisconsin Department of Corrections and Dr. Syed in this matter. Mr. McDaniel's challenges to the medical treatment decisions of DOC healthcare professionals fails on both procedural and substantive grounds. Procedurally this court should reject Mr. McDaniel's efforts to re-litigate this case on the basis of facts that were never properly presented to the district court. While pro se litigants are generally given some leniency in their filings the question of whether to grant leniency and how much leniency to give is squarely within the discretion of the court below. Here Mr. McDaniel's filings did not comply with the local rules and they did not provide the district court with a roadmap as to the relevant evidence or facts. Moreover the district court provided notice to Mr. McDaniel that he needed to cite to evidence in the record or separately filed affidavits or declarations that provided his side of the story and in fact Mr. McDaniel submitted exactly that type of affidavit in support of various motions in this matter. So while the district court was not required to exclude his improper factual assertions it certainly was in its discretion to do so. But even setting that aside Mr. McDaniel's claims fail on the substance. Before you get there Mr. Hector same question I posed to Mr. Kilberg. Does the outcome alter based upon the scope of the record? I don't think the outcome alters but I would point out that two key points of evidence that they rely on were not presented in the defendant's statement of facts. The first is that with respect to the incontinence there's nothing there that would suggest that the diapers that were provided to Mr. McDaniels are not an effective and reasonable accommodation to deal with that. And the second deals with the number of meals that Mr. McDaniels alleged he missed. I mean that changed from 21 alleged meals that he missed in his complaint to I believe 500 in his amended complaint. And there's no support for those numbers in the form of a properly submitted factual assertion. Were the I know that it was done by appointed counsel. Okay thank you. In terms of the substance of Mr. McDaniels claim Judge Hamilton you asked my friend about what line could be drawn here. And I think that line is the one that this court and other courts have recognized with respect to these anti-discrimination statutes. If a decision is based on medical judgment it reflects the kind of benign discrimination that is not cognizable under the ADA and Rehabilitation Act. It needs to be something that is consistent with the plain language of the laws based on the disability or because of the disability. Here there may be a dispute between Mr. McDaniel and DOC's healthcare workers about the extent of his condition and the propriety of a particular course of treatment. But the legal issues don't turn on that. The legal issues turn purely on whether DOC healthcare workers did an individualized assessment of Mr. McDaniel's condition and based their treatment decisions on that kind of medical judgment. But to hold otherwise would open the floodgates to reasonable accommodation claims because under Mr. McDaniel's view of the law anyone who's alleging inadequate treatment can simply transform that into a claim under the they did not receive somehow impaired and access to an activity or a program like mobility. That is an extremely low bar and it would allow litigants to have an end run around the standards of medical malpractice and deliberate indifference. So what do we do? Let's suppose that this evidentiary question about meals and pain medication missed because of stairs is an obstacle. I suppose that that's squarely presented for us on this record. We've got the Supreme Court's opinion in U.S. against Georgia indicates pretty clearly that a failure to accommodate mobility restrictions in a would deny access to things like health care and I suppose being fed would also count would be actionable even in prison under the statutes. Could you address that? Yes your honor. I think it's important to frame the question with respect to the defendant that these claims are brought against. The ADA and Rehabilitation Act claims are brought against the Department of Justice and DOC in addressing Mr. McDaniel's accommodation claims relied on the medical treatment decisions of the health care professionals. I mean that's what the ADA coordinator at Columbia did and that's what the ADA coordinator at New Lisbon did. So even accepting Mr. McDaniel's claims about missing meals or medication the issue is that there's certainly evidence in the record that the health care professionals also observed McDaniel at times walking with no apparent issue. That kind of issue is something that is squarely something that health care professionals are entitled to exercise their medical judgment in determining and if the Department of Corrections relies on those treatment decisions then the accommodation request has a neutral basis for its determination and it just takes it out of the framework for disability discrimination. So it sounds like what you're saying then is if if that he has to then meet the eighth amendment standard of deliberate indifference to be able to have access to food or other services and programs medical care for example. Your honor I think it really turns on whether an individualized assessment has been made and that's something that courts including the right case that my friend relies on have recognized in this context and in other contexts of the ADA and Rehabilitation Act. If there's been an individualized assessment it just takes it out of the disability discrimination framework. It may place it into the medical malpractice framework but there's no discrimination because of or based on a disability because it reflects the kind of benign discrimination that this court has recognized doesn't give rise to a discrimination claim. Well I guess I have trouble describing it as benign if we have a prisoner who can't get medical care and food. Well your honor I think if the if the determination was but there's there's there's no question that the evidence that the evidence in the record shows that at times Mr. McDaniel presented himself as as being in severe pain and that other at other times health care professionals observed him not having those about what accommodations in the first instance what medical treatment was appropriate in terms of addressing those issues. That is not to say that Mr. McDaniel does not have a claim that is possible in that kind of instance. Medical malpractice would clearly be the vehicle to challenge those sorts of treatment decisions but what he's doing here is he's challenging sort of the next level of decision maker which is the Department of Corrections. And the Department of Corrections is not engaging in disability-based discrimination if it simply adopts or relies on the individualized assessments. This isn't so much discrimination as denial of reasonable accommodation. We're not talking about a subjective standard are we? Well I think that both of the parties agree that under Yaros in order to that the action was taken because of the litigant's disability. And so there does need to be some nexus between the decision and the and the disability that's that's. Not animus? No I think animus would be required for you know the compensatory damages and monetary damages. In that same analysis I think informs the deliberate indifference standard. This is not a case where health care providers simply refused or completely ignored Mr. McDaniel's complaints. He was seen by the health care services unit numerous times. He received responsive care and while he may disagree with the course of treatment that was prescribed to him that disagreement does not give rise to a constitutional violation. Similarly this is not a case in which there is any evidence that a medical practitioner embarked on a course of treatment that was intended or would likely do harm and worsen the patient's condition. Here Mr. McDaniel's was provided with particular accommodations. He disagrees with that but there is no evidence in the record that those decisions reflected no medical competence or sub-minimal medical competence. One thing I do want to address is the questions that came up about the weight of the walker because I think that that is a bit of a red herring here. There's no evidence in the record as to the actual weight of the walker. This isn't something that Mr. McDaniel raised in his requests for accommodations and at the end of the day it is ultimately irrelevant to the question about whether the accommodation decisions he challenges on appeal were reasonable. At most to the extent that Mr. McDaniel presents evidence that he could not carry the walker up and down the stairs that would not have any bearing on the question of whether a no-stair restriction is reasonable or not. Healthcare practitioners including the operating surgeon from 2017, the physical therapist at Columbia Correctional Institution and Dr. Saeed all found that he should continue being mobile in order to stave off muscle atrophy and avoid permanent disability. Could you address Mr. Kilberg's point that mobility is one thing in essence stairs are another? Well I think that implicit in the decisions of the physical therapist and Dr. Saeed is that going up and down stairs was part of the physical therapy regimen that was prescribed to Mr. McDaniel and that it would help build his endurance strength and core strength. And here I think if there's an issue with the walker the accommodation there consistent with the determinations of the healthcare workers would be obvious. A lighter walker but since issue was never presented to the health services unit I don't think that it would be appropriate to on appeal use this newly raised evidence as something that would be pertinent to the reasonableness of the Department of Corrections decisions regarding Mr. McDaniel's accommodation requests. If the court has any other questions for me I am happy to answer them. Otherwise for the reasons stated I urge that this court affirm the decision of the district court. Thank you Mr. Hector. Mr. Kilberg we used up a fair amount of your time if you need a couple more minutes for rebuttal please go ahead. Thank you Judge. Yes three quick points I'd like to address. First with respect to missing meals I do think that there is there is a sufficient record evidence that the state submitted. First 8.044 that's our short appendix in which Dr. Saeed talked to the plaintiff about his mobility issues and there I believe that they also discussed the fact that McDaniel was not coming out of his cell to go up to the day room for meals and again at 8.174 paragraph 18 a prison official named Fink who was previously a defendant in this action said that McDaniel had started asking for meals to be delivered to his cell and for that reason had arranged for him to go to the health services unit to get checked out. The second point with respect to bias and treatment I think this court's precedents have been clear that there are multiple avenues from which to state a ADA or Rehabilitation Act claim and intentional discrimination is distinct from failure to accommodate and the nexus here is the fact that his disability with because of a disability he cannot go up the stairs for example repeatedly during the day and that is what is preventing him from being able to access programs or services. Third with respect to the evidentiary issue the procedural issue that is raised at the back end of our briefs I would just like to point out that McDaniel did sign these declarations under as declarations under penalty of perjury under 28 U.S.C. 1746 and the rule that the state would ask would be that a pro se litigant even when the district court directly tells him he can respond by telling his his version of events in a declaration would be that he has to file a second second set of paper and then refer over to that second set of paper to the extent that McDaniel's submissions in those in those documents his averments in those submissions were based on his personal knowledge or otherwise admissible I think the district court erred by not considering them. All right if there are no further questions we'll take the case under advisement.